UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | |
| v. | ) | No. 2:09-CR-17 |
| | ) | |
| | ) | |
| CHRISTOPHER ALAN MITCHELL | ) | |

MEMORANDUM OPINION

This matter is before the Court to consider objections to the Presentence Investigation Report ("PSR") raised by the government, [Doc. 69]. The government argues that "[b]ecause the defendant used the firearm he unlawfully possessed to kill his son, U.S.S.G. § 2K2.1(c)(1)(B) requires that the Court use the homicide guidelines when calculating defendant's base offense level." The government argues that the proper homicide cross-reference is to U.S.S.G. § 2A1.1, First Degree Murder, which applies in cases of premeditated killings, and when "death results from the commission of certain felonies." The government relies on 18 U.S.C. § 1111, which lists child abuse as an offense to which the felony murder rule applies, and argues that the defendant "committed child abuse when he shot his two-year-old son in the head, and that felony resulted in the death of the child."

The defendant objects to the Supplemental Addendum to the Presentence Investigation Report ("PSR"), prepared prior to the defendant's resentencing hearing, which stated the following:

> It should be noted that at the time of the defendant's sentencing, the United States did not pursue the application of a cross-reference or specific offense level enhancements. Based on the facts of this case, it appears a cross-reference to 2A1.1

could have been applied. Had this cross-reference been applied the defendant's Total Offense Level would have been 40, with a Criminal History Category of III, and guideline range of 360 months to Life.

[Doc. 65]. The defendant argues that a cross-reference to U.S.S.G. § 2A1.1, First Degree Murder, is inappropriate because the jury in the defendant's state trial found that he was guilty of neither first degree murder, second degree murder, nor voluntary manslaughter. [Doc. 75]. Rather, the defendant was convicted of criminally negligent homicide, reckless endangerment – deadly, tampering with evidence, and identity theft. The defendant argues that "the Court need not look beyond the state jury verdict, as to do so would essentially allow the government a second and third bite at the apple and principles of double jeopardy and due process weigh against doing so." [*Id*.]. "At most," the defendant states, "U.S.S.G. § 2K2.1(b)(6) for use or possession of a firearm or ammunition in connection with another felony offense would result in a 4-level increase (BOL 14 + 4 = 18) and a total offense level of 15 with a 3-level reduction for acceptance of responsibility and an advisory guideline range of 24 to 30 months given his criminal history category III." [*Id*.].

The defendant was originally sentenced in this Court to a total term of imprisonment of 180 months on April 28, 2010, [Doc. 36], after pleading guilty to Count One of the Indictment, which charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). [Doc. 19]. At the time of sentencing, the defendant was considered an armed career criminal pursuant to 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4, and was therefore subjected to the mandatory minimum term of 180 months. Paragraph 29 of the PSR provides as follows:

> **Chapter Four Enhancements:** As shown in Part B (Criminal History) below, the defendant has been convicted of at least three prior convictions for a violent felony or serious drug offense, or both, as defined in Title 18 U.S.C. § 924(e)(2), committed on occasions different from one another. Since the instant offense is a conviction for Title 18 U.S.C. § 922(g), the defendant is an armed career criminal within the meaning of USSG §4B1.4. Pursuant to USSG §4B1.4(b)(3)(B), the offense level is 33 rather than the lower level applicable from Chapters Two and Three. As the United States will not pursue any enhancements regarding the use of

the firearm during the commission of another felony offense, the offense level will not be determined, pursuant to Pursuant to USSG §4B1.4(b)(3)(A).

Following the Sixth Circuit decision in *United States v. Stitt*, 860 F.3d 854, 862 (6th Cir. 2017), which held that conviction under the Tennessee aggravated burglary statute did not qualify as a violent felony predicate offense under the Armed Career Criminal Act, this Court found that the defendant no longer qualified as an armed career criminal, and granted the defendant's 18 U.S.C. § 2255 motion to vacate his sentence. [Doc. 54]. The defendant is now before this Court for resentencing in this matter. A Supplemental Addendum to the PSR was filed, calculating a base offense level of 14, with a two-level reduction for acceptance of responsibility, for a total offense level of 12. [Doc. 56]. The advisory guideline range for a total offense level of 12 and criminal history category of III amounts to 15 to 21 months of imprisonment. [*Id.*].

The government, in its objections on resentencing, states that it did not previously request application of the 4-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for use or possession of a firearm in connection with a felony offense, or the homicide cross-reference under U.S.S.G. § 2K2.1(c)(1)(B) "out of professional courtesy to the Tennessee authorities who had not yet presented their evidence against defendant in state court." [Doc. 69]. The government also notes that it was not necessary to seek such enhancements during the original sentencing, due to the defendant's armed career criminal classification and resulting enhancement. [*Id.*]. Now, however, the government requests that the enhancement be applied to the defendant's base offense level.

It is clear, based on the evidence presented during the defendant's state trial, and his conviction in this court for possessing a firearm, that U.S.S.G. § 2K2.1(b)(6)(B) is relevant. This guideline provision provides that if the defendant "used or possessed any firearm or ammunition in connection with another felony offense," the base offense level should be increased by 4 levels, or, if the resulting offense level is less than 18, increase to level 18. U.S.S.G. § 2K2.1(b)(6)(B).

3

Application of this enhancement, with a three-level reduction for acceptance of responsibility, would result in a total offense level of 15, and an advisory guideline range of 24-30 months. In this case, it is clear that the defendant possessed a firearm in connection with another felony offense. The defendant was convicted in state court of criminally negligent homicide following the death of his son, who was shot with a firearm that belonged the defendant. Therefore, the enhancement under U.S.S.G. § 2K2.1(b)(6)(B) could properly be applied, resulting in a base offense level of 18 before acceptance of responsibility.

The question remains, however, whether the cross-reference under U.S.S.G. § 2K2.1(c)(1)(B) applies, which states: "if death resulted, the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide), if the resulting offense level is greater than that determined above." The government argues that U.S.S.G. § 2A1.1, First Degree Murder, is the most appropriate homicide cross-reference based on a felony murder theory. Application of § 2A1.1 would result in a base offense level of 43. The defendant argues that the most analogous homicide cross-reference would be to § 2A1.4(a)(1), Involuntary Manslaughter, which sets a base offense level of 12 if the offense involved criminally negligent conduct. [Doc. 70]. The defendant also argues that this Court cannot base the defendant's sentence on "information contrary to the jury verdict," and that a sentence "cannot be based upon information that the jury rejected by an affirmative factual finding beyond a reasonable doubt." [*Id*.]. Because the jury found that the "proof established guilt beyond a reasonable doubt for criminally negligent homicide," and not greater murder offenses, the defendant argues that this Court is bound by that verdict, and to disregard it would weigh against principles of double jeopardy and due process. [*Id*.].

Initially, this Court does not agree that it is bound by the jury's verdict in this situation. The defendant relies on *United States v. Pimentel-Lopez*, 859 F.3d 1134 (9th Cir. 2016) for its

4

claim that a sentencing judge cannot contradict a jury's findings of fact. This is an accurate statement of the holding in *Pimentel-Lopez*, but in that case the sentencing judge found that the defendant was in possession of more than 50 grams of methamphetamine, while a previous special jury verdict found beyond a reasonable doubt that the amount attributable to the defendant was less than 50 grams. *Id*. at 1140. "This is not a case," the *Pimentel-Lopez* court clarified, "where the jury failed to find a fact under the exacting standard applicable to criminal cases. Where this happens, the district judge is free to find the same fact under a less stringent standard of proof." *Id*. (citations omitted). *See also Dowling v. United States*, 493 U.S. 342, 349 (1990) ("[A]n acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof."); *United States v. Harris*, 552 Fed App'x 432, 440 (6th Cir. 2014) ("But a sentencing court may consider even acquitted conduct, so long as it is proved by a preponderance of the evidence.").

Indeed, the U.S. Supreme Court has made clear that "a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted." *United States v. Watts*, 519 U.S. 148, 152 (1997) (citing *United States v. Donelson*, 695 F.2d 583, 590 (D.C. Cir. 1982)). It is clear that an acquittal in a criminal case is discrete from a specific, affirmative finding of fact:

> "'[A]n acquittal is not a finding of any fact. An acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt. Without specific jury findings, no one can logically or realistically draw any factual finding inferences….' Thus … the jury cannot be said to have 'necessary rejected' any facts when it returns a general verdict of not guilty."

*Watts*, 519 U.S. at 155 (1997) (quoting *United States v. Putra*, 78 F.3d 1386, 1394 (9th Cir. 1996) (Wallace, J. dissenting) *rev'd* 519 U.S. 148 (1997)). Further, the Court in *Watts* found that this practice does not offend the principles of double jeopardy because "sentencing enhancements do

not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction." *Id.* at 154.

For these reasons, this Court does not believe that it is bound by the verdict returned by the jury in the defendant's state trial. This Court, therefore, must now consider whether the facts determine by a preponderance of the evidence that the cross-reference to U.S.S.G. § 2A1.1 is appropriate under a felony murder theory. The government argues that the defendant committed first degree murder because death resulted in the perpetration of child abuse, an enumerated underlying felony for the purposes of felony murder in 18 U.S.C. § 1111. The statute also defines "child abuse" as "intentionally or knowingly causing the death or serious bodily injury to a child[.]" *See* 18 U.S.C. § 1111(c)(3). The government contends that "it is more likely than not that defendant knowingly shot his two-year-old son, thereby committing child abuse." [Doc. 71 n.3]. In response, the defendant argues that "there was no motive or reason advanced by the state of Tennessee as to why Mr. Mitchell would kill his son," and that the proof at trial demonstrated that "the death of his son was an accident amounting to criminally negligent homicide." [Doc. 75].

After an examination of the transcript of the defendant's state trial, this Court agrees with the defendant that the state of Tennessee did not advance the theory that the defendant shot his son. In fact, during opening statements, the attorney for the government stated that "the proof will show conclusively that this was a preventable death with just an ounce of responsible care on the part of this defendant." [Doc. 75-1 at 21]. During cross-examination of the defendant, the prosecution focused primarily on the defendant's placement of the loaded gun in a kitchen cabinet, [Doc. 74-3 at 74-76], the defendant's knowledge that his son played with toy guns, [*Id.* at 73], and the defendant's deceitful behavior after the shooting, [*Id.* at 85-92]. At no point during the

examination of the defendant did any attorney ask him if he pulled the trigger. The state's closing argument likewise abandons any theory that the defendant shot his son:

> We don't know where the gun was. We know it was loaded. We know there was a chamber in the round. We know that Jacob was capable of picking it up. We know that Jacob was a boy that liked to play with guns, toy guns. … But, with that there has to be a little bit of parental responsibility isn't there? If there's a gun in the house secure it somewhere; make sure it's where a child can't get it. Put a trigger lock on it. Keep it unloaded. Don't chamber a bullet. We can go on and on. There's a bunch of different ways that this defendant could have done something that would have prevented this from happening.

[Doc. 75-1 at 53]. The proof presented at trial, and the arguments made on behalf of the state of Tennessee, does not lead this Court to conclude that the defendant knowingly or intentionally shot his son, thereby committing felony murder child abuse under 18 U.S.C. § 1111(a), (c)(3). This Court **FINDS** that the government's contention that the defendant knowingly shot his son cannot be supported by a preponderance of the evidence. Therefore, the government's objection to the PSR, in which it seeks to apply a cross-reference to §2A1.1, First Degree Murder, on a felony murder theory, is **OVERRULED**.

In considering whether a cross-reference for homicide is appropriate at all, this Court **FINDS** that the most analogous offense is that of Involuntary Manslaughter involving reckless conduct, § 2A1.4(a)(2)(A). Recklessness is defined in the sentencing guidelines as "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." Although the jury found that the defendant was guilty only of criminally negligent homicide beyond a reasonable doubt, a preponderance of the evidence indicates that the defendant acted with recklessness when he placed a loaded gun in a cabinet that he knew his son could access. This cross-reference, however, would not apply in this case because it does not result in an offense level greater than the one determined under §

2K2.1(b)(6)(B), which increases the defendant's base offense level to 18. The guidelines provide that, if death results from the defendant's possession of a firearm, the sentencing court should apply the most analogous homicide cross-reference *if the resulting offense level is greater than that determined above. See* U.S.S.G. § 2K2.1(c)(1)(B) (emphasis added). Applying a cross-reference to involuntary manslaughter with reckless conduct would also result in a base offense level of 18. Therefore, this Court will apply the enhancement under § 2K2.1(b)(6)(B) for the defendant's use or possession of a firearm in connection with another felony offense, resulting in a base offense level of 18. With a three-level reduction for acceptance of responsibility, the defendant's total offense level is 15, which, with a criminal history category of III, results in an advisory sentencing guidelines range of 24-30 months.

  ENTER:

                 s/J. RONNIE GREER
                 UNITED STATES DISTRICT JUDGE